## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

SALOMON SMITH BARNEY INC.

    Plaintiff,

v.

PETER J. DEBLASI,

    Defendant.

_____/

CASE NO.:

**00-6154**

**CIV-ZLOCH**

MAGISTRATE JUDGE
SELTZER

### MEMORANDUM IN SUPPORT OF SMITH BARNEY'S
### EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER
### AND/OR FOR A PRELIMINARY INJUNCTION

Plaintiff's request for a temporary restraining order and/or for a preliminary injunction arises

from the breach of a written agreement by defendant Peter J. Deblasi (hereinafter "DeBlasi"). The

defendant was employed by the plaintiff as a financial consultant in the plaintiff's Ft. Lauderdale,

Florida office. On January 28, 2000, a Friday, the defendant resigned without prior notice to accept

employment with Morgan Keegan & Company Inc. ("Morgan Keegan"), a direct competitor of the

plaintiff.

In exchange for certain financial inducements, the defendant has secretly misappropriated

the plaintiff's records and solicited the plaintiff's customers on behalf of his new employer, Morgan

Keegan. Plaintiff asserts in this action that the defendant has engaged in, and continues to engage

in, the following acts:

    1.    Copying, removing, and retaining original or computerized records and other

confidential information and customer lists contained therein, including the names, addresses,

account information and financial data of the hundreds of Smith Barney accounts he serviced;



2.      Disclosing, producing and/or using on behalf of his new employer, Morgan Keegan, the contents of these confidential records; and

3.      Using the confidential customer information contained in Smith Barney's records to solicit Smith Barney customers and providing these customers with pre-prepared account transfer forms to transfer their accounts from Smith Barney to defendants' new employer.

The defendant's conduct is in direct violation of a written agreement signed by the defendant. On or about January 19, 1995, defendant DeBlasi signed a Financial Consultant Associate Training Contract (the "Training Contract"). A copy of the Training Contract is attached to the Supporting Affidavit as Exhibit "B." In pertinent part, the Training Contract states the following:

**II      Confidentiality of Records**:

> I understand that any client records and information including names and addresses and account information, whether generated by Smith Barney or me, are confidential and proprietary information as well as an important business asset of Smith Barney. I will use such originals and/or copies of information only in the normal course of Smith Barney's business and will not remove any client-related records or information in any form whatsoever from Smith Barney's premises during or after my employment, nor will I ever transfer or disclose such documents or information to any third party either orally or in writing.

**IV      Termination of Employment**:

> **A. Non-Solicitation Agreement.** If my employment with Smith Barney Shearson terminates for any reason I will not, within one year of my leaving, solicit any of the clients I serviced at Smith Barney Shearson or any clients I learned of during my employment at Smith Barney Shearson who reside within one hundred (100) miles of the Smith Barney Shearson office(s) at which I was employed.

2

*Salomon Smith Barney v. Peter J. DeBlasi*
Memorandum in Support of Smith Barney's Emergency Motion for a Preliminary Injunction

In addition, to the covenants set forth above, defendant DeBlasi expressly consented to

the issuance of injunctive relief to prevent breach of his contractual obligations.  In this regard, the

Training Contract states in pertinent part:

V       **Legal Liability and Enforcement:**

> Any controversy arising out of or relating to this contract or my employment
> or termination thereof, shall be arbitrated before and pursuant to the rules of,
> the NYSE or the National Association of Securities Dealers, Inc. ("NASD").
> *I consent and agree to the issuance of a temporary restraining order or
> preliminary or permanent injunction by a court of competent jurisdiction to
> prevent the breach of the confidentiality and non-solicitation provisions of
> this contract, or to maintain the status quo pending the outcome of any
> arbitration proceeding which may be initiated.* [emphasis added]

## ENTITLEMENT TO INJUNCTIVE RELIEF

### Likelihood of Success on the Merits The Defendant's
### Employment Agreement is Enforceable

1.      **Florida Law**

Reasonable contractual restrictions on post-employment conduct in employment agreements

are plainly enforceable under Florida law.  *See* Fla. Stat. § 542.33; *Hagerty, id.* at 1557-58; *Dyer v.

Pioneer Concepts, Inc.,* 667 So.2d 961 (Fla. 2nd DCA 1995); *Jewett Orthopaedic Clinic* v. White,

629  So.2d 922, 926 (addressing 2 year, 6  county, non-competition agreement of physician and

concluding that under Fla. Stat. § 542.33 "there is no basis at this stage of the proceedings to

determine that the Jewett covenant is unreasonable as a matter of law").  The restrictions contained

3

within the Training Contract are narrowly limited in scope to those clients serviced by the defendant or to those clients whose names became known to the defendant while he was employed at plaintiff Smith Barney. The duration is limited to a reasonable term of one year and the geographic restriction is equally reasonable, 100 miles from the office where the defendant DeBlasi was last employed. There is no doubt that agreements such as the one signed by the defendants are consistently enforced by Florida courts. *Jewett Orthopaedic, id.*; *Graphic Bus. Sys. v. Rugge,* 418 So.2d 1084 (Fla. Dist. App. 1982) (enforcing two year covenant); *Capelouto v. Orkin Exterm. Co. of Florida Inc.,* 183 So.2d 532 (Fla. 1966), *appeal dismissed* 385 U.S. 11 (1986) (same).

In *Merrill Lynch v. Hegarty,* 808 F.Supp 1555 (S.D. Fla. 1992), *aff'd,* 2 F.3d 405 (11th Cir. 1993) (Exhibit "A") the court dealt with the enforcement of restrictive covenants in a broker's employment contract on facts almost identical to the facts now before this court. In *Hagerty,* the court found that an employment agreement executed by a former Merrill Lynch broker protected a *legitimate business interest of Merrill Lynch pursuant to Fla. Stat § 542.33* and enjoined all solicitation and acceptance of business from accounts formerly serviced by the defendant. *Hegarty,* 809 F. Supp. at 1558. The court found that the list of customers serviced by the broker was a trade secret pursuant to Fla. Stats. §§ 688.002 and 812.081; that the former employer would suffer irreparable harm absent the entry of injunctive relief; that monetary damages were not adequate under Florida law, and that the Florida public interest, as expressed in Fla. Stats. §§ 542.33 688.002 and 812.081, favored entry of injunctive relief. *Hegarty,* 808 F. Supp. at 1558-60.

2. **New York Law**

While this action in pending in Florida, defendant DeBlasi's Training Contract refers to New York law.   New York law also supports the entry of injunctive relief to enforce restrictive

4

*Salomon Smith Barney v. Peter J. DeBlasi*
Memorandum in Support of Smith Barney's Emergency Motion for a Preliminary Injunction

covenants. *Chernoff Diamond & Co. v. Fitzmaurice, Inc.*, 234 A.D.2d 200, 202-03, 651 N.Y.S.2d 504, 506 (1st Dep't 1996) (preliminary injunction granted against insurance broker who began to compete with former employer, where employment agreement prohibited defendant for two years from soliciting on contacting any person who was a client of plaintiff and where client list was only "in part" confidential, and defendant, while in plaintiff's employ, "obtained invaluable and otherwise unobtainable information concerning the business practices" of plaintiff and "needs of [its] clients due to his position as their trusted professional adviser"); *Garvin GuyButler Corp. v. Cowen & Co.*, 155 Misc. 2d 39, 41, 588 N.Y.S.2d 56, 58 (N.Y. Sup. Ct. 1992) (preliminary injunction granted against securities brokers who joined a competitor of their former employer, where employment contract contained agreement "not to use or disclose to anyone confidential information or trade secrets during the period of [their] employment, and one year beyond termination"; brokers alleged to have taken "confidential, proprietary trade information concerning customer' trading positions and are utilizing such information to benefit themselves and [defendants] to the detriment of [plaintiff]").

As with Florida law, the law of the State of New York clearly supports the entry of injunctive relief to prevent the solicitation of customers by former employees. Plaintiff has, therefore, demonstrated a likelihood of success on the merits.

## Irreparable Harm

### 1.    Florida Law

Irreparable harm is *presumed* under Florida law when use of customer lists and solicitation of customers occurs. *See* Fla. Stat. § 542.33; *Gupton v. Village Key & Saw Shop*, 656 So.2d 475 (Fla. 1995) (irreparable harm presumption statutorily mandated for all contracts signed prior to

KELLEY & WARREN, P.A., ATTORNEYS AT LAW
1555 PALM BEACH LAKES BOULEVARD, SUITE 1006, WEST PALM BEACH, FLORIDA 33401

1990); *Hegarty,* 808 F. Supp. at 1558-60 ( "[T]he Florida Supreme Court [has] reiterated that an injunction, not monetary damages was the proper remedy for a breach of a non-competition agreement [and is] the only effectual relief"). Florida Statute § 542.33(2)(a) provides that: "[u]se of specific trade secrets, customer lists or direct solicitation of existing customers *shall be presumed to be an irreparable injury* and may be specifically enjoined." (emphasis added).

    2.    **New York Law**

    New York law applies a presumption similar to Florida's presumption of irreparable harm. Under New York law, the "inevitable disclosure" doctrine provides that where an employee has moved to another company to perform a very similar function, disclosure of the former employer's confidential and proprietary information will be presumed and injunctive relief is appropriate. *See DoubleClick, Inc. v Henderson* et al. , No. 116914/97, 1997 WL 731413, at *5 (Sup. Court N.Y. County November 7, 1997) (:[i]njunctive relief may issue where a former employee's new job function will inevitably lead her to rely on trade secrets belonging to a former employer"; injunction granted because " it appears to the court that the defendants will inevitably use [the former employer's] trade secrets"); *Lumex, Inc. v. Highsmith*, 919 F. Supp. 624, 631 (E.D.N.Y. 1996) (injunction granted because : [i]t is inevitable that [the former employee] will disclose important . . . trade secrets and confidential information"); *Business Intelligence Services, Inc. v. Hudson*, 580 F. Supp. 1068, 1072 (S.D.N.Y. 1984) (preliminary injunction issued because disclosure of former employer's computer software product and client information by former employee to new employer and rival is "likely, if not inevitable").

    The presumption regarding "inevitable disclosure" is warranted because "it [is] unlikely that [a former employee] could 'eradicate [the former employer's] trade secrets from [his] mind'",

*DoubleClick, Inc.*, 1997 WL 731413 at *5, and, therefore "[i]t is inevitable that [that knowledge] will be disclose[d] in his efforts to . . . aid his new employer and his own future." *Lumex*, 919 F. Supp. at 631. *See also Pepsico, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) (employee preliminary enjoined).

In such situations, former employees need not possess unique or extraordinary skills for an injunction to issue. Indeed, in *Reed Roberts Assocs., Inc. v. Straumen*, 40 N.Y.2d 303, 386 N.Y.S.2d 677, 680 (1976), the Court of Appeals recognized the need to enforce restrictive covenants to guard against disclosure of proprietary information:

> Of course, the courts must also recognize the legitimate interest an employer has in safeguarding that which has made his business successful and to protect himself against deliberate surreptitious commercial piracy. Thus restrictive covenants will be enforceable to the extent necessary to prevent the disclosure of trade secrets or confidential customer information. [citations omitted]

Under New York's inevitable disclosure doctrine, the plaintiff is entitled to the injunctive relief sought here.

### 3.    Irreparable harm present without presumption

Even without the presumption of irreparable harm, the plaintiff clearly will suffer irreparable harm in the absence of injunctive relief. Absent immediate injunctive relief, it will be impossible to determine the plaintiff's damages with any reasonable degree of certainty. As stated by the court in *Merrill Lynch v. Stidham,* 658 F.2d 1098 (5th Cir. 1981):

> The injury here is such that damages could not adequately compensate. Were Defendants permitted by the law to exploit the clientele of their former employers, every investment that reasonably flowed from the exploitation should be included in the damages award. How such a figure could be arrived at escapes us.

7

*Salomon Smith Barney v. Peter J. DeBlasi*
Memorandum in Support of Smith Barney's Emergency Motion for a Preliminary Injunction

*Id.* at 1102 (emphasis added)

Similarly, in *Bradley,* the court reached the same conclusion, expressly holding that the former employer "faced irreparable non-compensable harm in the loss of its customers." 756 F.2d at 1055. Monetary damages simply cannot compensate for the defendant's breach of his post-termination covenants. The defendant's unlawful attempt to capitalize on the solicitation of the plaintiff's customers involves financial loss to the plaintiff which is incapable of measurement, requiring the issuance of an injunction to protect the plaintiff from irreparable harm.

Additionally, beyond any possible monetary harm, the defendant's conduct threatens the stability of the plaintiff's Ft. Lauderdale, Florida office.   Unless injunctive relief is granted, employees will likely breach their contractual commitments in exchange for monetary inducements. In *Merrill Lynch v. Kramer,* 816 F.Supp. 1292   (N.D. Ohio 199 ), the court made the following statement while granting injunctive relief:

> [I]njunctive relief is required to protect [Merrill Lynch] from similar conduct by other   employees and to discourage competitor firms ... from paying such employees large sums    of money to induce them to breach their contracts, to confiscate confidential client    records and to divert those clients to the competitor.

*Id.* at 1247; *Hegarty,* 808 F.Supp. at 1560 n.3.

In sum, the plaintiff is presumed under either Florida law, or under New York's inevitable disclosure doctrine, to suffer irreparable harm in this case. However, even absent the presumption, the plaintiff  faces significant irreparable harm on numerous levels, including the infliction of

8

*Salomon Smith Barney v. Peter J. DeBlasi*
Memorandum in Support of Smith Barney's Emergency Motion for a Preliminary Injunction

incalculable damages, the loss of client confidentiality, and a threat to its office stability, all of which necessitate the issuance of injunctive relief.

## Potential Harm to Defendants Outweighed by Harm to the Plaintiff if Injunction Denied and the Injunction is Consistent with the Public Interest

The balance of the equities between the plaintiff and the defendant clearly supports the injunctive relief sought. An injunction would enforce the clear public policy set forth in Florida Statute §542.33 and under New York law and would protect the plaintiff's goodwill, business reputation, and contract rights. *Hagerty, id.* at 1560. An injunction would promote the public interest in the protection of the investment made by businesses in the development of their companies and communities, and the public interest in the enforcement of fiduciary duties and reasonable contracts. Moreover, an injunction would protect the plaintiff's highly sought after client list and the confidentiality of those clients' records. An injunction would also discourage competitors from inducing the plaintiff's employees to breach their fiduciary and contractual duties and from converting the plaintiff's confidential property.

By contrast, the defendant has deliberately breached his obligations to the plaintiff and has misappropriated the plaintiff's property. An injunction will not prevent the defendant from earning a living at the same trade, even with a competitor, and without any delay, so long as it is done with non-Smith Barney customers. Any potential harm to the defendant is clearly outweighed by the potential harm to the plaintiff if injunctive relief is not granted. Further, the granting of an injunction is consistent with the public policy of the State of Florida and with the State of New York.

9

*Salomon Smith Barney v. Peter J. DeBlasi*
Memorandum in Support of Smith Barney's Emergency Motion for a Preliminary Injunction

### <u>Injury So Imminent That a Temporary Restraining Order Should Be Entered Without Notice and a Preliminary Injunction Hearing Should Be Scheduled on an Emergency Basis</u>

It is clear that the defendant has already gained a significant time advantage over the plaintiff in soliciting plaintiff's customers. The defendant resigned his employment with the defendant on a Friday afternoon. Defendant immediately began soliciting the plaintiff's clients over the weekend in violation of the Training Contract. The plaintiff has been delayed by the weekend and by the time necessary to gather proof of solicitation by the defendant in violation of the Training Contract and by the time necessary to prepare the pleadings which have now been filed with this court.

As discussed above, the harm now being suffered by the plaintiff is irreparable. Unless immediate injunctive relief is granted, it will be too late to prevent harm to the plaintiff as the defendant will have already contacted and solicited the plaintiff's clients. Giving notice to the defendant and scheduling a hearing on the plaintiff's request for a temporary restraining order is impractical as such a course of action would render moot any relief the court might ultimately grant as the harm would already be done. Given the nature of the harm, the plaintiff should not be delayed further in seeking relief for the defendant's clear breach of his contractual obligations. Granting *ex parte* relief will not prejudice the defendant as he may immediately move to dissolve the temporary restraining order and the temporary restraining order will expire within 10 days if not renewed at a hearing on plaintiff's application for a preliminary injunction.

10

*Salomon Smith Barney v. Peter J. DeBlasi*
Memorandum in Support of Smith Barney's Emergency Motion for a Preliminary Injunction

### Return to Status Quo

Plaintiff seeks a return to the status quo by the issuance of an Order that requires the defendant to return all confidential data wrongfully confiscated from the plaintiff and providing that the defendant not engage in the further solicitation of plaintiff Smith Barney's customers. Defendant should also not enjoy the fruits of his illegal acts - he must be enjoined from engaging in or receiving business from any customer they have improperly solicited in violation of their respective agreements. *See, e.g., Merrill Lynch v. Arno*, No. 95-8025-CIV-HURLEY (S.D. Fla. 1995) (Exhibit "B" hereto) ("The provision of this Order enjoining defendants from accepting business or account transfers from customers defendant has solicited prior to entry of the Temporary Restraining Order is necessary to ensure that Merrill Lynch receives the benefit of its agreement with defendant, to enforce the public interest in the enforcement of reasonable contracts, and to prevent defendant from violating the paramount equitable principal that "one should not benefit from their own wrongdoing").

### CONCLUSION

For the reasons stated above, plaintiff Smith Barney has shown a likelihood of success on the merits of its claims, that it will suffer irreparable harm, that it is without an adequate remedy at

11

*Salomon Smith Barney v. Peter J. DeBlasi*
Memorandum in Support of Smith Barney's Emergency Motion for a Preliminary Injunction

law, and that the equities and public interest tilt heavily in its favor as a matter of law. Accordingly,

plaintiff Smith Barney respectfully seeks preliminary injunctive relief as requested in the plaintiff's

motion.

Dated: February 1, 2000

> KELLEY & WARREN, P.A.
> Attorneys for Plaintiff
> 1555 Palm Beach Lakes Blvd, Suite 1006
> West Palm Beach, FL 33401
> (561) 681-9494
>
> By:_____
> Glenn D. Kelley, Esq.
> Florida Bar No: 0341037
> Lonnie K. Martens
> Florida Bar Number 848840

12

[15] Plaintiff's request for a declaratory judgment that his rights were violated is moot. Plaintiff is no longer incarcerated at Charlotte Correctional Institution.

[A]bsent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred....

*Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir.1986) (citing *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir.1985) (per curiam)).

[16] Plaintiff's claim that he was denied a Form DC1-303 form while in disciplinary confinement cannot be decided on summary judgment. Defendants have sworn that these forms are available to inmates in disciplinary confinement. Plaintiff swears they were not. The Court cannot resolve this factual dispute on summary judgment. *Perry v. Thompson*, 786 F.2d 1093 (11th Cir.1986). Therefore, Defendants Dean, Youngblood and Tomkins' motion for summary judgment will be denied as to this claim. Accordingly, the Court orders:

1. That Defendants Wright, Carter and Thompson's motion for summary judgment (Doc. No. 30) is granted;

2. That Defendant Dean, Youngblood and Tomkins' motion for summary judgment is granted on all claims except Plaintiff's allegation that he was denied a DC1-303 form while in disciplinary confinement.

3. That, pursuant to Rule 54(b), Federal Rules of Civil Procedure, entry of final judgment will be withheld pending disposition of the case in its entirety.

4. That all other pending motions (Doc. No. 33, 35) are denied as moot.

DONE AND ORDERED.



MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,

v.

Thomas HAGERTY, Defendant.

No. 92-8642-CIV.

United States District Court,
S.D. Florida.

Oct. 27, 1992.

Brokerage firm brought action against former account executive for breach of noncompetition agreement. Firm moved for preliminary injunction. The District Court, Nesbitt, J., held that: (1) agreement was enforceable; (2) executive did not overcome statutory presumption of irreparable harm; and (3) balance of harms and public policy weighed in favor of firm.

Motion granted.

1. Contracts ⟣118
Under Florida law, noncompetition agreement which prohibited former account executive from using brokerage firm's customer lists to solicit customers for competitor protected "legitimate business interests," so that it was enforceable, notwithstanding executive's claim that he compiled list himself. West's F.S.A. §§ 542.33, 812.081.
See publication Words and Phrases for other judicial constructions and definitions.

2. Damages ⟣120(7)
Under Florida law, commissions of brokerage firm's competitor for one year following hiring of firm's former account executive were not reliable measure of firm's damages due to executive's breach of noncompetition agreement by using firm's client list to solicit clients for competitor, so that executive did not overcome statutory presumption of irreparable harm; differences in reputation, services, and products of firm and competitor would have impact on commissions, some clients would be lost entirely, that executive would have been unable to successfully lure firm's current

**EXHIBIT A**

clients away if he had complied with agreement warranted extension of damages for entire period- executive serviced those clients, and firm would lose business its current clients would refer to it in future. West's F.S.A. § 542.33.

**3. Injunction ⊖61(2)**

Under Florida law, injunction, not monetary damages, is proper remedy for breach of noncompetition agreement.

**4. Injunction ⊖138.39**

Brokerage firm was entitled to preliminary injunction prohibiting former account executive from using firm's client lists to solicit clients for competitor in violation of noncompetition agreement; 551 accounts were at risk, representing over $650,000 in gross commissions, as well as any future accounts current clients would refer to firm, accounts represented return on significant investment by firm, injury to firm would be irreparable, harm to executive was mitigated by his ability to solicit new clients as well as his present clients' ability to contact him, executive expressly agreed to be enjoined if he violated agreement, injunction would not preclude public from contacting defendant, and Florida's public policy favored protecting firm's interests. West's F.S.A. §§ 542.33, 812.081; F.S.1973, § 608.001.

---

Ronald B. Ravikoff, Humberto J. Pena, Zuckerman, Spaeder, Taylor & Evans, Miami, FL, Thomas T. Loder, Rubin & Associates, Paoli, PA, for plaintiff.

Curtis Carlson, Carlson, Bales & Schwed, P.A., Miami, FL, for defendant.

**ORDER GRANTING PRELIMINARY INJUNCTION**

NESBITT, District Judge.

This cause comes to the Court upon the Plaintiff's Motion for a Preliminary Injunction filed October 5, 1992. The Court held a hearing on October 16, 1992 where both parties came and were heard. After careful consideration, it is ORDERED and ADJUDGED as follows:[1]

In this diversity action Plaintiff alleges that Defendant breached an Account Executive Training Agreement ("Account Agreement") between the parties. This agreement provides in part that:

1. All records of Merrill Lynch, including the names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch, and that none of such records nor any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except in the ordinary course of conducting business for Merrill Lynch.
2. In the event of termination of my services with Merrill Lynch for any reason, I will (i) not solicit, for a period of one year from the date of termination of my employment, any of the clients or prospective clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch in any office of Merrill

---

1. On October 6, 1992, the Court issued a Temporary Restraining Order and scheduled an October 16th hearing on the Plaintiff's Motion for a Preliminary Injunction. The Court also directed the Defendant to file his opposing memorandum by October 15th. On October 16th, the Defendant filed an untimely thirty-five page memorandum in violation of Rule 10(C) of the Rules of the United States District Court for the Southern District of Florida ("Local Rule(s)"). The Court struck Defendant's memorandum, but provided the Defendant an opportunity to file an amended memorandum before the hearing. Defendant subsequently filed a memorandum which complied with the Local Rules. At

the October 16th hearing, the Court denied Defendant's motion to resubmit its original memorandum.

Subsequently, the Defendant sent an ex parte letter to the Court seeking to substitute a revised memorandum because the memorandum submitted prior to the hearing "contain[ed] many errors and *omitted important arguments.*" This letter and the attached memorandum violate Local Rule 10(M) and Rule 4-3.5(b)(2) of the Rules Regulating The Florida Bar. For these reasons, and because the memorandum admittedly contained arguments the Plaintiff had no opportunity to address, the memorandum is stricken and will not be considered.

**MERRILL LYNCH, PIERCE, FENNER &. SMITH v. HAGERTY    1557**

Cite as 808 F.Supp. 1555 (S.D.Fla. 1992)

Lynch in which I was employed, and who reside within the same state as the Merrill Lynch office or offices in which I was employed, and (ii) return any original records and purge or destroy any computerized, duplicated or copied records referred to in paragraph (1) which have been removed from the premises of Merrill Lynch in any form.

Defendant also agreed to abide by Plaintiff's "Compliance Outline" which provides that

> Client's accounts shall be handled in a highly confidential manner. You should not discuss the affairs of any client with anyone else.
>
> .    .    .    .    .
>
> No information or records concerning the affairs of Merrill Lynch and/or its clients may be released except to persons legally entitled to receive such. This includes confidential information requested during routine regulatory visits.

On September 1, 1992, the Plaintiff terminated the Defendant. Defendant subsequently commenced employment with Raymond James & Associates ("Raymond James")—a competitor of Plaintiff. Plaintiff alleges that the Defendant has been using customer lists Defendant acquired while employed by Plaintiff to solicit Plaintiff's customers over to Raymond James. Plaintiff requests that the Court enjoin Defendant's conduct because it violates his Account Agreement.

In order to secure injunctive relief the Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm; (3) greater harm to the Plaintiff than to the Defendant; and (4) promotion of the public interest. *All Care Nursing Serv., Inc. v. Bethesda Memorial Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir.1989). No one element is controlling; instead, the Court must balance each factor in light of the circumstances. *Florida Medical Ass'n Inc. v. U.S. Dept. of Health, Ed. and Welfare*, 601 F.2d 199 (5th Cir.1979).

The Court finds that the Plaintiff has established a substantial likelihood of suc-

cess on the merits. The Account Agreement requires Defendant to return all original Merrill Lynch records and purge all copies of those records in his possession when he ceases working for Plaintiff. The agreement also prohibits the Defendant from soliciting any clients he serviced while working for Plaintiff.

[1] Despite the Account Agreement's clear language, the Defendant retained a home database containing the names and financial information of Plaintiff's clients after he left Plaintiff's employ. Defendant subsequently provided this information to Raymond James. Defendant and Raymond James then solicited virtually all of the approximately three hundred clients Defendant had serviced while employed by Plaintiff. A number of these clients have already transferred their Merrill Lynch accounts to, or opened new accounts with, Raymond James and conducted transactions through Raymond James. These actions unquestionably violate the Account Agreement.

Defendant, relying on *Hapney v. Central Garage, Inc.*, 579 So.2d 127 (Fla. 2nd Dist.Ct.App.1991), argues that the Account Agreement is unenforceable because it does not protect a "legitimate business interest." [2] In *Hapney*, the court held that under § 542.12 Fla.Stat., now § 542.33, an enforceable non-competition agreement "must relate to a legitimate business interest of the employer in order to restrict or impinge upon the right to pursue and earn a living guaranteed by our constitution." *Id.* at 131. The Court then listed three categories of recognized interests: (1) trade secrets and confidential business lists; (2) customer goodwill; and (3) extraordinary or specialized training provided by the employer. Applying these criteria, the Court finds that the Account Agreement protects a legitimate business interest held by the Plaintiff.

Defendant argues that Plaintiff has no legitimate business interest in the customer lists because the Defendant compiled the

---

2. Defendant does not contend that the Agreement is invalid on its face, *see e.g. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham*, 658

F.2d 1098 (5th Cir.1981), and thus the Court need not address that issue.

entire client list on his own time and at his own expense. The facts, however, belie Defendant's position. Although the Defendant testified that he researched potential clients himself, he also testified that he used Plaintiff's facilities to solicit and service those customers. Specifically, Defendant used Plaintiff's phones, postage, promotional literature, name and reputation when communicating with prospective and current clients; and used Plaintiff's full service facilities to open client accounts, effectuate transactions, and service clients generally. Indeed, Defendant testified that he solicited 80% of his clients at Plaintiff's office and that Plaintiff's reputation was an important part of his sales pitch. Most important, Defendant conceded that he could not have carried on this business without the Plaintiff because he did not have the necessary resources to solicit and service these accounts. The Court finds that Plaintiff has a legitimate business interest in the customer list based on its substantial, indeed essential, contribution to the list's development.

Regardless of who compiled the customer list, however, it is clearly protected under *Hapney*. The *Hapney* court's ultimate holding was that *"trade secrets, customer lists, and the right to prevent direct solicitation of existing customers are, per se, legitimate business interests* subject to protection; [and] other business interests, such as, extraordinary training or education, may constitute predictable interests depending on the proof adduced." *Id.* at 134 (emphasis added). Florida Statute § 812.081 defines trade secret as

> any ... *list of customers* ... which is secret; of value; for use or in use by the business; and of advantage to the business, or providing an opportunity to obtain an advantage over those who do not know how to use it, *when the owner takes measures to prevent it from becoming available to persons other than those selected by the owner* to have access thereto for a limited purpose.

§ 812.081 Fla.Stat. (emphasis added). The Defendant conceded on cross-examination that the customer list is comprised of

Plaintiff's customers. Considering the measures Plaintiff took to ensure the list's confidentiality, *see* Affidavit of Aleks Acimovic, the Court finds that the list is a trade secret as defined in § 812.081. Accordingly, Plaintiff has a legitimate business interest in the list because it is a trade secret.

Plaintiff, however, would have a legitimate business interest in the customer list even if it were not a trade secret. The *Hapney* court explicitly held that "customer lists, and the right to prevent direct solicitation of existing customers are, per se, legitimate business interest." *Hapney*, at 134. There is no doubt that the subject of this dispute is a customer list and that the list contains Plaintiff's existing customers. Moreover, Plaintiff is clearly attempting to "prevent direct solicitation of existing customers." Thus, under *Hapney* the Plaintiff has a per se legitimate, indeed substantial, business interest in the customer list.

Having determined that the Plaintiff has a legitimate business interest in the list, the Court must find that the Account Agreement is valid. The Court also finds that the Defendant has admittedly violated the agreement and that, therefore, the Plaintiff is likely to succeed on the merits. The Court must next determine whether the Plaintiff will suffer irreparable harm if the motion is not granted.

Section 542.33 of the Florida Statutes provides that the "use of specific trade secrets, customer lists or direct solicitation of existing customers shall be presumed to be irreparable injury and may be specifically enjoined." The Court has already determined that Defendant's conduct implicates all three of these criteria. Accordingly, the burden shifts to the Defendant to overcome the presumption that his conduct will irreparably harm the Plaintiff.

[2] Defendant's primary argument against irreparable harm is that Plaintiff's damages are ascertainable and thus subject to a final monetary judgement. In support

of this proposition the Defendant cites *Merrill Lynch, Pierce, Fenner & Smith v. de Liniere*, 572 F.Supp. 246 (N.D.Ga.198?) and *Merrill Lynch, Pierce, Fenner & Smith Inc. v. E.F. Hutton & Co., Inc.*, 403 F.Supp. 336 (E.D.Mich.1975). The Court finds these cases unpersuasive for basically two reasons. First, the Court notes that neither case involved a statutory presumption of irreparable harm. Indeed, the Court in *E.F. Hutton* based its finding on the *Plaintiff's* failure to meet its burden of proof. *E.F. Hutton* at 343–44. Second, the Court simply disagrees that Plaintiff's damages can be determined with "a sufficient degree of certainty." *Id.* at 343.

[3] Florida courts have repeatedly held that injunctive relief is appropriate where customer lists are involved. In *Carnahan v. Alexander Proudfoot Co*, 581 So.2d 184 (Fla. 4th Dist.Ct.App.1991), the court found that even if irreparable injury *was not presumed*, copying computer disks and soliciting clients would cause irreparable harm. Under the current facts and statute, however, irreparable injury actually is presumed. Moreover, the Florida Supreme Court has held repeatedly that where a Defendant has breached a covenant not to compete "[t]he Court may award damages ... but the normal remedy is to grant an injunction. This is so because of the inherently difficult task of determining just what damage is actually caused by the employee's breach of the agreement." *Miller Mechanical, Inc. v. Ruth*, 300 So.2d 11 (Fla.1974). In *Capraro v. Lanier Business Products, Inc.*, 466 So.2d 212 (Fla. 1985), the Florida Supreme Court reiterated that an injunction, not monetary damages, was the proper remedy for a breach of a non-competition agreement. Addressing irreparable injury the Court also held that

> [t]o require that a plaintiff prove irreparable injury ... would, in most instances, defeat the purpose of the plaintiff's action. Immediate injunctive relief is the essence of such suits and often times the only effectual relief. It truly can be said in this type of litigation that relief delayed is relief denied.

*Id.* at 213.

Florida law, therefore, recognizes that monetary damages are generally an inade-quate remedy where an employee breaches a non-competition agreement. Defendant's position does not undermine Florida's statutory and precedent presumption of irreparable harm.

Defendant's position incorrectly presumes that Raymond James' commissions are a reliable measure of Merrill Lynch's damages. Defendant's expert conceded, however, that when a broker solicits clients away from a former employer the clients sometimes choose not to do business with either party. Moreover, the Defendant testified that Merrill Lynch's reputation, services and products were essential element's of his business success. While the evidence also indicated that Merrill Lynch's reputation, services and products were among the best in the industry, there was no comparable evidence of Raymond James' reputation, services or products. Regardless, these qualities will undoubtably differ in some respects, and these differences undoubtably will impact Defendant's future success. Moreover, some clients undoubtably will be lost entirely. Consequently, the Court finds that Defendant has not establish that Raymond James' commissions are a reliable measure of Merrill Lynch's damages.

Even if Raymond James' commissions were an appropriate measure of damages, there is no way to adequately determine that amount with a "sufficient degree of certainty." Defendant initially maintained that Plaintiff's damages would be limited to one year, and conceded that "[c]alculating damages ... for a ten year period [would be] a much more onerous task." *See* Defendant's Response Memorandum in Opposition to Preliminary Injunction at 3 n. 2. This position presumes that Plaintiff is not entitled to damages for business Defendant solicits after one year because Defendant would be able to recapture these clients after the non-competition clause expired. Defendant, however, testified that he would be unable to solicit these clients in a year if he complied with the terms of the agreement. Because Defendant would be unable to successfully lure Plaintiff's current clients away if he complies with the agreement, the damages for breaching the

agreement must extend for the entire period Defendant services those clients.

Apparently realizing this, Defendant attempted to show at the hearing that damages over an extended period easily could be calculated. First, Defendant's expert testified that there is approximately a 20% annual client turnover in the industry. Second, the expert testified that he could calculate damages over an extended period of time because every transaction is recorded. On cross-examination, however, the witness conceded that some clients will remain with a firm for decades. He also conceded that he could not reliably calculate Plaintiff's damages until the account was closed. This opinion is supported by testimony from Plaintiff's witness, Aleks Acimovic, who testified that an account's current business activity is not necessarily representative of its future activity. Therefore, according to Defendant's own witness, approximately 20% of Plaintiff's damages could not be determined for five years and damages for certain accounts might not be ascertainable for decades.

In addition to lost profits from its present accounts, Plaintiff also alleges that it will lose business its current clients would refer to it in the future. In response, Defendant again argues that these damages can be determined because every account's source and activity is recorded. The derivative nature of these damages only compounds the difficulties in calculating damages previously discussed. For instance, would Merrill Lynch be entitled to all the profits from new accounts or only the portion equal to its contribution in developing that account? More important, the *Defendant* is solely responsible for identifying referred accounts. Thus, there is no objectively reliable mechanism for determining which of Defendant's future accounts are derived from Plaintiff's current accounts. The effectiveness of Plaintiff's remedy should not depend on whether the Defendant truthfully and accurately discloses the source of his future accounts.

For these reasons, the Court finds that Defendant has not overcome the statutory presumption of irreparable injury. Indeed, under these facts no presumption is necessary to find irreparable harm.[3]

[4] The Court must next evaluate the balance of harms between the parties. At risk in this suit are 551 accounts, representing approximately $56.4 million of assets and over $653,000 in gross commissions, as well as any future accounts current clients will refer to Plaintiff. As the Court has already explained, these accounts represent a return on a significant investment by Plaintiff. Moreover, the Court has already determined that the injury to Plaintiff will be irreparable. On the other hand, Defendant testified that it will take him seven years to develop a comparable client list. The harm to the Defendant, however, is mitigated by his ability to solicit new clients as well as his present clients' ability to contact him. In addition, the Defendant testified that he will receive twice the commission for new accounts at Raymond James. Finally, the Defendant expressly agreed to be enjoined if he violated the Account Agreement. The Court finds, therefore, that the balance of harms weighs in favor of the Plaintiff.

Finally, the Court finds that an injunction will further the public interest. The injunction only prohibits the Defendant from soliciting clients; it does not preclude the public from contacting the Defendant. Furthermore, Florida's public policy clearly favors protecting Plaintiff's interests. *See, e.g.,* Fla.Stat. §§ 542.33, 608.001, 812.081.

In sum, the Court finds that the Plaintiff has demonstrated a substantial likelihood of success on the merits, as well as, certain and irreparable harm. Balancing these factors with the relative harm to the parties and the public interest it is ORDERED and ADJUDGED that the Plaintiff's Motion for a Preliminary Injunction is GRANTED. The Preliminary injunction shall incorporate the terms of the Temporary Restraining Order issued October 6,

---

3. Although the Court finds that Plaintiff has clearly established irreparable harm, it further notes that monetary damages can not compensate Plaintiff for Defendant's unilateral breach of client confidentiality. Nor can monetary damages compensate Plaintiff for the example Defendant's actions set for other Merrill Lynch employees—which will inevitably result in future litigation expenses.

Z.K. MARINE, INC. v. M/V ARCHIGETIS                1561
Cite as 808 F.Supp. 1561 (S.D.Fla. 1992)

1992. The Preliminary Injunction shall remain in effect pending further Order of this Court or until a decision in arbitration conducted before a duly appointed panel of arbitrators convened in accordance with the Constitution and Rules of the New York Stock Exchange, and hearings otherwise held in accordance with the Constitution and Rules of the New York Stock Exchange.[4] It is further ORDERED and AD-JUDGED that all further proceedings are hereby stayed other than to enforce the terms of the Preliminary Injunction.

DONE and ORDERED.



Z.K. MARINE, INC. and Southern Offshore Yachts, Inc., Plaintiffs,

v.

M/V ARCHIGETIS, her engines, tackle, furnishings, etc. in rem, Malvern Maritime, Inc., her owner, operator, etc., Federal Pacific (Liberia), LTD., a division of Fednav Limited d/b/a Fedpac Lines; Continental Stevedoring Terminals, Inc., and Off Shore Marine, Inc., Defendants.

JAY BETTIS AND CO. OF FLORIDA, and Miller Yacht Sales, Inc., Plaintiffs,

v.

FEDERAL PACIFIC (LIBERIA), LTD., and Fednav Limited, d/b/a Fedpac Lines, Malvern Maritime, Inc., and the M/V ARCHIGETIS, in rem, its engines, furniture, tackle, apparel, etc., Defendants.

Nos. 88–1715–Civ., 88–1838–Civ.

United States District Court, S.D. Florida.

Dec. 3, 1992.

Holders of yachts' bills of lading brought action under admiralty jurisdiction against carrier and its agents, seeking to recover for cargo damage to four yachts and loss of one yacht during ocean transit. The United States District Court for the Southern District of Florida, Hoeveler, J., 776 F.Supp. 1549, granted summary judgment for defendants, limiting their liability to $500 per lost or damaged vehicle. Plaintiffs filed motions to alter, amend or correct judgment or order. The District Court, Hoeveler, J., held that Carriage of Goods by Sea Act (COGSA) applied to shipment of yachts which were covered by contracts specifying on-deck carriage.

Order affirmed.

1. Federal Civil Procedure ⇐2655

Motion for reconsideration should not be used as vehicle to present authorities available at time of first decision or to reiterate arguments previously made. Fed. Rules Civ.Proc.Rules 59(e), 60(b), 28 U.S.C.A.

2. Shipping ⇐140(2)

Paramount clause of bill of lading, together with clause addressing on-deck carriage of goods, and clause spelling out $500 limitation on carrier liability, extended Carriage of Goods by Sea Act (COGSA) to contract for on-deck carriage of five yachts, even though such shipments fall outside purview of COGSA, and bill of lading did not explicitly refer to COGSA. Carriage of Goods by Sea Act, 46 App.U.S.C.A. § 1300 et seq.

3. Shipping ⇐103

Carriage of Goods by Sea Act (COGSA) is United States codification of original Hague Rules and is generally applicable to goods shipped from foreign ports to ports in United States. Carriage of Goods by Sea Act, §§ 1–16, 46 App.U.S.C.A. §§ 1300–1315.

4. Shipping ⇐103

Harter Act was inapplicable to contract for on-deck shipment of yachts, where

4.   The Defendant's Motion to Compel [expedited] Arbitration and Stay Action is DENIED for the     reasons stated in Plaintiff's opposing memorandum.

IN THE UNITED
FOR THE SOUTHER      DISTRICT COURT
                     TRICT OF FLORIDA

LINCH, PIERCE, FENNER
RITH, INC.,
re Corporation,
t Indiantown Road
Florida  33477,

            Plaintiff

FILED by _____ O.C.

CIVIL ACTION

NO. 92- 8642-Cv-Nesbitt

V. Hegarty
ton Circle
, Florida  33458

            Defendant

## ORDER

AND NOW, this _____ day of October, 1992, upon

ration of the Complaint and Motion of Plaintiff and having

ned that:

1.    Plaintiff will suffer irreparable harm and loss if

nt is permitted to (a) convert the property of Merrill

o Defendant's own personal use and benefit, and that of

nt's new employer, Raymond James & Associates, and (b)

Merrill Lynch accounts, clients and customers;

2.    Plaintiff has no adequate remedy at law; and

3.    Greater injury will be inflicted upon Plaintiff by

ial of temporary injunctive relief than would be inflicted

fendant by the granting of such relief, and an injunction

the public interest in the protection of confidential and

ncret business and client property and enforcement of

agreement, fiduciary relation and fiduciary duty;

at Plaintiff post security in support thereof in the amount

~~~-~~~~ by no later than the ___ day of October, 1992;

2.    Defendant is enjoined and restrained, directly or

ctly, and whether alone or in concert with others,

ing any agent, representative or employee of Defendant's

t employer, Raymond James & Associates, until hearing and

fter until further Order of this Court from:

a)    soliciting any business from any client

f Merrill Lynch who resides in the state of Florida

hom Defendant served or whose name became known to

efendant while in the employ of Merrill Lynch, and

rom accepting any business or account transfers from

ny of said customers whom Defendant has solicited in

he past for the purpose of doing business with

efendant's present employer including, without

imitation, the individuals and entities referenced in

xhibit "C" to Plaintiff's Complaint (excluding

efendant's immediate family);

b)    using, disclosing, or transmitting

nformation contained in the records of Merrill Lynch,

ncluding the names, addresses, and financial

nformation of clients referenced in Exhibit "C"; and

hat original records and all copies and/or

eproductions and/or computerized recordings thereof,

4.    Plaintiff is ____ ied leave to commence ____ very
ately upon reasonable notice;

5.    This Order shall remain in full force and effect
____ eriod of 10 days, unless extended or this Court
ically orders otherwise in accordance with Fed. R. Civ. P. 65;

6.    Defendant shall show cause before this Court on
16th day of _____ 1992 at 3:00 o'clock P.m., or
m thereafter as counsel may be heard, why a Preliminary
tion should not be ordered according to the terms and
ions set forth above.

BY THE COURT:

_____
                                    U.S.D.J.

rill Lynch, Pierce, Fenner & Smith, Inc. v In... ...garty and Raymond James & Co.

5:
...r(s):
Loder, Esq. — Paoli, PA

...r(s):
...n Esq. — Miami, FL

| l: 10/15/92 | First Scheduled: 03/23/93 | Decided: 03/29/93 |

IITIARY: Member Firm v Registered Representative for alleged breach of fiduciary duty, unfair competition and conversion of trade secrets
dent left Claimant's employ. Claimant seeks injunctive relief barring Respondent from soliciting clients of Claimant firm. Respondent
... for damages arising out of Claimant's action in obtaining a temporary injunction. Respondent maintains such dispute should be resolved
ration.

| | Product: | Market: |

| l | Award Data | |
| 000.00 | CC/3rd Pty: $418,344.00 | Award: Yes | CC 3rd Pty: $0.00 |
| .00 | Punitive: $500,000.00 | Punitive: $0.00 | Punitive: $0.00 |
| 1.00 | Atty Fees: $0.00 | Atty Fees: $0.00 | Atty Fees: $0.00 |
| 00.00 | Deposit: $0.00 | Costs: $0.00 | Costs: $0.00 |
| | | Forum Fees: $6,000.00 | |

undersigned arbitrators have decided and determined in full and final settlement of all claims between the parties that
... raining order shall remain in force until one (1) year from the date of termination or until August 31, 1993. The counter-claim of
... by dismissed in all respects. Forum fees payable to the New York Stock Exchange are assessed against Merrill Lynch.

= Dissents)

Signatures:

*John B. X'...ley*
*John P. Severson*
*...*

| a | State: FL | Date: 03/29/93 | Docket #: 1992-002761 |

Hearing Dates:
03/23/93 (2)
03/24/93 (2)
03/25/93 (2)

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

L LYNCH, PIERCE, FENNER :
CH :
iware Corporation :
East Indiantown Road :
r, Florida  33477 :
                                :
          Plaintiff             :
                                :   CIVIL ACTION
r.                              :
                                :   NO.  92-8642
 W. HEGARTY                     :
impton Circle                   :
r, Florida  33458               :
                                :
          Defendant             :
                                :
                                :

FILED by MT D.C.

NOV 3 0 1993

CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

ORDER CONFIRMING NYSE ARBITRATION AWARD

AND NOW, this 26 day of November,1993, there

·ing good cause therefore, and pursuant to Section 9 of the

.l Arbitration Act, 9 U.S.C. §§ 9, the New York Stock

ge Arbitration Decision in the arbitration between Merrill

 Pierce, Fenner & Smith, Inc. and against Respondents

 W. Hegarty and Raymond James & Associates Inc., dated

29, 1993, and attached hereto and incorporated herein, is

 confirmed and adopted as the judgment of this Court.

Lenore Nesbitt
United States District Judge

ILL LYNCH, PIERCE,                    NO. 95-8025
ER & SMITH INC.,                      CIV-HURLEY

    Plaintiff,

    v.                                ORDER ENTERING
                                      PRELIMINARY INJUNCTION

AN M. ARNO,

    Defendant.
_____

THIS CAUSE has come to this Court upon Plaintiff's Emergency
tion for Injunctive Relief filed on January 12, 1995. This Court
ered a Temporary Restraining Order on January 17, 1995. The
rt reviewed and considered Defendant's Motion to Dissolve the
porary Restraining Order and other pertinent motions filed by
ch parties. Thereafter, the Court held a Preliminary Injunction
ing on January 26, 1995. After careful consideration of the
ties' arguments, and after hearing testimony and argument at the
uary 26, 1995, hearing, this Court finds as follows:

PRELIMINARY CONSIDERATIONS

    As a preliminary matter, this Court finds that pursuant to the
stitution and Rules of the New York Stock Exchange regulating
e securities industry, disputes between brokerage firms, such as
aintiff, and their employees, such as defendant, must be
mitted to arbitration. However, despite such an agreement, this

**EXHIBIT B**

## I. FINDINGS OF FACT

1. Plaintiff, MERRILL LYNCH, PIERCE, FENNER & SMITH, is
a licensed brokerage firm that trains, licenses and registers its
account executives, and provides resources, sales support, and
systems.

2. Defendant, ALAN ARNO, signed an Account Executive
Trainee Agreement with the Plaintiff shortly after his employment
in 1981, which agreement provides in part as follows:

1. All records of Merrill Lynch, including the names and
addresses of its clients, are and shall remain the property of
Merrill Lynch at all times during my employment with Merrill
Lynch and after termination of my employment for any reason
with Merrill Lynch. None of said records nor any part of them
is to be removed by me from the premises of Merrill Lynch
either in original form or in duplicated or copied form, and
the names, addresses, and other facts in such records are not
to be transmitted verbally or in writing by me except in the
ordinary course of conducting business for Merrill Lynch. All
of said records or any part of them are the sole proprietary
information of Merrill Lynch and shall be treated by me as
confidential information of Merrill Lynch.

2. In the event of termination of my services with Merrill
Lynch for any reason, I will not solicit, for a period of one
year from the date of termination of my employment in any
community or city served by the office of Merrill Lynch or any
subsidiary thereof, at which I was employed at any time, any
of the clients of Merrill Lynch whom I served or whose names
became known to me while in the employ of Merrill Lynch. In
the event that any of the provisions contained in this
paragraph and/or paragraph (1) above are violated I understand
that I will be liable to Merrill Lynch for any damage caused
thereby.

employee leaves Merrill [ ]'s employ.

[ ] defendant [ ] successful Account Ex[ ]tive during

[ ]is tenure as an employee of Merrill Lynch, having serviced over

[ ] customers representing $75-80 million in assets, and $400-500,

[ ]00 in gross annual commissions.

5. At the time he left Merrill Lynch's employ, on or

[ ]bout January 11, 1995, defendant had in his possession copies of

[ ]onthly statements and holding pages which contained the names and

[ ]ddresses of clients serviced by him while at Merrill Lynch. These

[ ]ocuments contained information that provided defendant with a good

[ ]ndication of the clients' purchases and financial background.

6. Shortly after beginning his employment with a

[ ]ompeting brokerage firm, Smith Barney, Inc., defendant made these

[ ]ocuments available to Smith Barney which used these records and

[ ]ailed out, by regular mail and Federal Express, solicitation

[ ]etters and account transfer forms to approximately 300 former

[ ]rrill Lynch clients who had been serviced at Merrill Lynch by

[ ]efendant.

II. CONCLUSIONS OF LAW

After careful consideration of the parties' argument and the

[ ]elevant case law, the Court has determined that Merrill Lynch has

[ ]t the four requirements for a preliminary injunction. <u>Haitian</u>

<u>Refugee Center   Inc. v. Nelson</u>, 872 F.2d 1555, 1562 (11th Cir.

[ ]989) ("four requirements for preliminary injunctive relief are:

3

injury to the movants out    as the potential harm to opposing

party; and (4) that the injunction if issued, would not be adverse

to the public interest"), aff'd 498 U.S. 479 (1991).

A.    Likelihood of Success on the Merits

Plaintiff has shown a substantial likelihood of success

on the merits. The Merrill Lynch employment contract signed by

defendant demonstrates that Merrill Lynch has a clear right to

relief in the event defendant breaches the agreement following the

termination of employment. This contract is narrowly tailored, is

valid, and is enforceable under either Florida or New York law.

Merrill Lynch v. Hegarty, 808 F.Supp. 1555 (S.D. Fla. 1992),

affirmed 2 F.3d 405 (11th Cir. 1993); Ecolab v. K.P. Laundry

Machinery, Inc., 656 F. Supp. 894, 898-99 (S.D.N.Y. 1987).

B.    Irreparable Harm

The Court finds that Merrill Lynch will suffer

irreparable harm and injury if defendant is permitted to solicit

Merrill Lynch customers, accounts and clients, and convert Merrill

Lynch accounts for defendant's own personal use and benefit and/or

the benefit of defendant's agent or employer. Merrill Lynch v.

Hegarty, 808 F.Supp. 1555 (S.D. Fla. 1992), affirmed 2 F.3d 405

(11th Cir. 1993).

Merrill Lynch and its client lists. The resulting harm to defendant, while not insignificant, arises simply from requiring defendant to fulfill his contractual obligations. Defendant signed the Account Executive Trainee Agreement. Defendant may still pursue his career in the profession and may service customers not solicited from Merrill Lynch's client base. Defendant simply may not solicit customers of Merrill Lynch for his own benefit or that of his new employer.

D. **Public Interest**

Finally, the issuance of an injunction in this case is not adverse to the public interest. The injunction would promote the public interest in enforcing valid contractual agreements and would promote Florida's public policy of safeguarding confidential customer lists. The provision of this Order enjoining defendant from accepting business or account transfers from customers defendant had solicited prior to the entry of the Temporary Restraining Order is necessary to ensure that Merrill Lynch receive the benefit of its agreement with defendant, to enforce the public interest in the enforcement of reasonable contracts, and to prevent defendant from violating the paramount equitable principal that one should not benefit from his own wrongdoing."

5

premises, it is hereby
ORDERED AND ADJUDGED as follows.

1. Plaintiff's motion for preliminary injunctive relief is hereby GRANTED. Defendant is enjoined and restrained, directly and indirectly, and whether alone or in concert with others, including any agent, representative or employee of defendant's current employer, from:

a. soliciting any business from any client of Merrill Lynch whom defendant served or whose name became known to defendant while in the employ of Merrill Lynch, and from accepting any business or account transfers from any of said customers whom defendant has solicited in the past for the purpose of doing business with defendant's present employer (excluding defendant's immediate family);

b. using, disclosing, or transmitting information contained in the records of Merrill Lynch, including the names, addresses, and financial information of clients serviced by defendant while in the employ of Merrill Lynch, and all original records and copies and/or reproductions and/or computerized recordings thereof, in whatever forms, must be immediately returned to the plaintiff.

6

solicited by defendant, or the Agency Dispute, between the time defendant left Merrill Lynch's employ and the time the Temporary Restraining Order was entered by this Court on January 17, 1995.

2.    The Court further orders that the preliminary injunction bond filed with the Clerk of this Court on January 19, 1995, be increased to $150,000.

3.    This injunction is conditioned upon the parties' agreement, and the parties accept this condition required by the Court, to participate in an expedited NASD arbitration to commence on February 15, 1995, and shall remain in effect until February 22, 1995, or until such earlier date as a decision is rendered by an NASD arbitration panel to extend, modify, or dissolve the terms hereof.  Unless Merrill Lynch participates in expedited NASD arbitration on February 15, 1995, this injunction will be immediately dissolved.  Any such expedited proceeding is to be conducted in accordance with the substantive rights to which both parties are entitled by the applicable arbitration rules. Defendant has agreed that Merrill Lynch shall be the claimant in any arbitration proceeding.

4.    These Findings of Fact and Conclusions of Law are preliminary in nature.  The arbitration panel which will hear this dispute is free to reach its own determination concerning the

7

in the terms of the preliminary injunction, provided said clients be fully serviced by him at Merrill Lynch, may also advise said clients of the terms of this preliminary injunction.

6. The Court retains continuing jurisdiction of this matter to ensure compliance with the terms of this Order.

DONE AND ORDERED in Chambers, at the United States District Court, West Palm Beach, Florida, this _____ day of February, 1995.

SIGNED AND DATED

FEB 6 - 1995

United States District Judge

JUDGE DANIEL T.K. HURLEY

Copies furnished to:
all counsel of record

8