IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**00-6154**
**CIV-ZLOCH**

**MAGISTRATE JUDGE SELTZER**

| | |
|---|---|
| SALOMON SMITH BARNEY INC., | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. |
| PETER J. DEBLASI, | ) |
| Defendant | ) |

## AFFIDAVIT OF ROBERT P. McCABE

Robert P. McCabe, after being duly sworn, states and deposes as follows:

1. I am over eighteen years of age and am otherwise competent to give this affidavit, which I make based on personal knowledge and on personal review of Salomon Smith Barney Inc. ("SSB")'s business records.

2. I am First Vice President-Investments/Resident Manager of SSB, a securities broker-dealer. I am the Branch Manager of SSB's branch office located at 350 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, Florida office (hereinafter the "Ft. Lauderdale Office").

3. As a broker-dealer, SSB is engaged in an intensely competitive business in the financial and securities industry. SSB competes with other broker-dealers for the financial and investment business of retail customers. SSB spends enormous time and resources in training its registered representatives, or brokers, in how to attract and retain customers and build and service portfolios. SSB is also engaged in substantial advertising in an attempt to attract customers whose accounts its brokers will serve.

4.   Peter J. DeBlasi ("DeBlasi") came to SSB in January of 1995 with the desire to obtain employment as a broker in SSB's Ft. Lauderdale office. SSB agreed to hire DeBlasi.

5.   For the entire period of DeBlasi's employment, SSB provided DeBlasi with substantial resources to assist DeBlasi in servicing SSB's clients. For example, SSB provided DeBlasi with research and analysis concerning the market and investment vehicles. In addition, SSB provided DeBlasi with on-going training, sales meetings, a sales assistant, and full operational support. SSB also assisted DeBlasi in developing customer accounts. SSB assigned accounts to DeBlasi of other brokers who had left the firm, assigned new leads to DeBlasi, and regularly allowed DeBlasi to have the opportunity to do new business with "call-ins" and "walk-ins" and as a result of SSB's national advertising.

6.   On or about January 28, 2000, DeBlasi resigned his employment. A copy of his resignation letter is attached hereto as Exhibit "A". DeBlasi resigned his position with SSB to accept employment with Morgan, Keegan & Company, Inc. ("Morgan Keegan"), a direct competitor of SSB. Upon information and belief DeBlasi received a substantial up-front bonus and other financial inducements which I believe were designed to induce him to accept employment with Morgan Keegan and to solicit SSB's customers to open accounts with Morgan Keegan.

7.   On January 19, 1995, DeBlasi signed a Financial Consultant Associate Training Contract (the "Training Contract"), a true and correct copy of which is attached hereto as Exhibit "B." The Training Contract states:

> **II   Confidentiality of Records:**
>
> > I understand that any client records and information including names and addresses and account information, whether generated by Smith Barney or me, are confidential and proprietary information as well as

an important business asset of Smith Barney. I will use such originals and/or copies of information only in the normal course of Smith Barney's business and will not remove any client-related records or information in any form whatsoever from Smith Barney's premises during or after my employment, nor will I ever transfer or disclose such documents or information to any third party either orally or in writing.

**IV**    **Termination of Employment:**

**A. Non-Solicitation Agreement.** If my employment with Smith Barney Shearson terminates for any reason I will not, within one year of my leaving, solicit any of the clients I serviced at Smith Barney Shearson or any clients I learned of during my employment at Smith Barney Shearson who reside within one hundred (100) miles of the Smith Barney Shearson office(s) at which I was employed.

**V**    **Legal Liability and Enforcement:**

Any controversy arising out of or relating to this contract or my employment or termination thereof, shall be arbitrated before and pursuant to the rules of, the NYSE or the National Association of Securities Dealers, Inc. ("NASD"). *I consent and agree to the issuance of a temporary restraining order or preliminary or permanent injunction by a court of competent jurisdiction to prevent the breach of the confidentiality and non-solicitation provisions of this contract, or to maintain the status quo pending the outcome of any arbitration proceeding which may be initiated.* [emphasis added]

      8.      In order to protect itself from competition, SSB makes substantial efforts to ensure the confidentiality of information concerning its customers. In addition to contractual provisions such as those set forth above, SSB also requires brokers and sales assistants to abide by employee policies and procedures that specifically deal with customer information as being the property of the firm and that prohibit use or divulgence of this information other than in connection with the business of the firm. Otherwise, the firm maintains policies to safeguard customer information in order to protect the privacy interests of customers and to keep strictly internal this information so

that it does not fall into the hands of our competitors. These policies include not providing such information to any third party. Obviously, any divulgence of our customer information to competitors would give those competitors a substantial, unfair advantage in being able to solicit our customers to switch to the competitor.

9. SSB's Ft. Lauderdale branch office exerts substantial efforts to maintain the secrecy and confidentiality of its customer records, including information identifying its customers. SSB's office is kept locked and secure during non-working hours. The computer system is password protected, and only the broker, his sales assistant, the branch manager and necessary operational personnel have access to the broker's account information. Brokers do not have access to other brokers' account information. Customer information that SSB is required to maintain is kept secure in the broker's offices or in the operations area, to which access is very restricted and which is kept locked. Other customer information that SSB is not required to maintain is routinely disposed of in a secure manner to prevent confidential customer information from falling into the hands of third parties.

10. SSB's customer information, including customer lists, derive actual and potential economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use. In particular in this case, SSB's customer lists and customer information derive substantial economic value from not being known to or readily ascertainable by Morgan Keegan, a direct competitor.

11. The harmful impact to SSB of Morgan Keegan raid on SSB's Ft. Lauderdale branch office cannot be overstated. SSB's accounts that were served by DeBlasi contained assets of over $10 million. The commissions in these accounts over the past 12 months was $175,000. Should

- 4 -

DeBlasi and Morgan Keegan continue in their attempt to lure these accounts away from SSB and use SSB's confidential lists and information, SSB will suffer immediate harm that cannot be undone.

12.   DeBlasi is in fact soliciting SSB clients to transfer their accounts to Morgan Keegan. I have personally spoken with SSB clients previously serviced by DeBlasi and these clients have told me that DeBlasi has solicited their business.  This is a direct violation of the Training Contract referred to above.

_____
Robert P. McCabe

Sworn to and subscribed
before me this 1 day
of February, 2000.

_____
Notary Public

My Commission Expires:

    5-9-03
_____
(AFFIX NOTARIAL SEAL)

OFFICIAL NOTARY SEAL
TAMI G GREENE
COMMISSION NUMBER
CC831500
MY COMMISSION EXPIRES
MAY 9 2003

- 5 -

January 28, 2000

Salomon Smith Barney
350 E. Las Olas
Suite 1200
Ft. Lauderdale, Fl 33301

Dear Robert McCabe:

This letter is to inform you that I resign effective on January 28, 2000 at 4 p.m. eastern standard time.
I would like to thank Salomon Smith Barney for the opportunity afforded me.

Best Regards,

Peter J. DeBlasi

EXHIBIT A

# FINANCIAL CONSULTANT ASSOCIATE
# TRAINING CONTRACT

**Parties:**
This is a binding contract between Smith Barney Shearson Inc., its subsidiaries, successors and assigns ("hereinafter referred to as Smith Barney Shearson") and myself, PETER J. DOLASI, a Smith Barney Shearson Financial Consultant Associate ("Associate" and also referred to in this contract as "I" or "me" as appropriate).

**Purpose and Intent:**
It is my desire and that of Smith Barney Shearson to enroll me in the Smith Barney Shearson Financial Consultant Training Program ("Training Program").

Smith Barney Shearson agrees to employ me as an Associate and enroll me in its Training Program. Smith Barney Shearson is committed to my professional development and will avail me of the advantages of its training and development system. In addition, Smith Barney Shearson shall expend considerable sums of money for my compensation, instruction, meals, lodging, transportation, licensing and registrations, as well as for operational and related costs for the time period I am in the Training Program.

In consideration of the training I will receive, the expenditures by Smith Barney Shearson, the career opportunities which will be afforded me during and after the Training Program and the support services and facilities which will be provided me, I will comply with the following terms of this contract.

II. **Confidentiality of Records:**
I understand that any client records and information including names and addresses and account information, whether generated by Smith Barney Shearson or me, are confidential and proprietary information as well as an important business asset of Smith Barney Shearson. I will use such originals and/or copies of information only in the normal course of Smith Barney Shearson's business and will not remove any client-related records or information in any form whatsoever from Smith Barney Shearson's premises during or after my employment, nor will I ever transfer or disclose such documents or information to any third party either orally or in writing.

IV. **Termination of Employment:**
A.   Non-Solicitation Agreement. If my employment with Smith Barney Shearson is terminated for any reason I will not, within one-year of my leaving, solicit any of the clients I serviced at Smith Barney Shearson or any clients I learned of during my employment at Smith Barney Shearson who reside within one hundred (100) miles of the Smith Barney Shearson office(s) at which I was employed.

**EXHIBIT B**

B. **Employment-at-Will.** I understand and agree that the employment relationship between me and Smith Barney Shearson is "at-will" which affords either of us the right to terminate the relationship at any time for any or no reason not otherwise prohibited by applicable law.

C. **Reimbursement of Training Expenses.** I agree to pay damages to Smith Barney Shearson in an amount described below if my employment is terminated for any of the following reasons: I terminate my employment, or I provoke my termination by words or conduct which would reasonably be expected to result in such termination by Smith Barney Shearson. My failure to pass the Series 7 New York Stock Exchange ("NYSE") examination does not constitute such provocation. Reimbursement of training costs and expenses will not be required of me in the event I leave Smith Barney Shearson and do not seek employment elsewhere as a Registered Representative in the securities or commodities industries.

    1. In the event my employment is terminated under "C", above, prior to completion of thirty-six (36) months after my registration is approved by the NYSE, I will pay Smith Barney Shearson the sum of Forty Five Thousand Dollars ($45,000.00), which I understand represents the costs and expenses incurred by Smith Barney Shearson in training me. I hereby agree that this is a reasonable figure.

    2. Smith Barney Shearson agrees that it will reduce this $45,000.00 damages figure by One Thousand Two-Hundred Fifty Dollars ($1,250.00) for each month I remain in the employ of Smith Barney Shearson after my registration is approved by the NYSE.

    3. In the event that I am already registered with the NYSE, I agree that, for purposes of this subsection, my registration will be considered "approved by the NYSE" in the month that members of my training class receive their production numbers. I agree that this production number will supersede any prior production numbers I may have.

    4. In the event that I am already registered with the NYSE and enter the training program during or after Phase Three of the Training Program, the damages figure in "C" (1) above shall be reduced to $44,000.00.

D. **Effect of termination on compensation.** I agree that if my employment is terminated for any reason, I will only be entitled to commissions, finder's fees, sales credits, bonuses or any other compensation which were credited to me on or prior to the effective day of my termination.

V. **Legal Liability and Enforcement:**
Any controversy arising out of or relating to this contract or my employment or termination thereof, shall be arbitrated before and pursuant to the rules of, the NYSE or the National Association of Securities Dealers, Inc. ("NASD"). I consent and agree to the issuance of a temporary restraining order or preliminary or permanent injunction by a court of competent jurisdiction to prevent the breach of the confidentiality and non-solicitation provisions of this contract, or to maintain the status quo pending the outcome of any arbitration proceeding

which may be initiated. Upon demand by Smith Barney Shearson, I consent and agree to expedited arbitration and the issuance of an injunction by the arbitrators. In the event Smith Barney Shearson institutes legal or equitable proceedings to enforce or collect damages under this contract, I agree to pay Smith Barney Shearson attorney's fees with interest and costs.

VI. **Non-Waiver:**
I understand that Smith Barney Shearson may at various times decide not to enforce all or part of this contract or similar contracts with other Smith Barney Shearson Financial Consultant Associates. I agree that such instances of non-enforcement shall not constitute a waiver, and will not prevent Smith Barney Shearson from enforcing any or all of the remaining portions of this contract against me.

VII. **Miscellaneous:**

A. I will at all times comply with Smith Barney Shearson's internal policies and procedures as well as state and federal securities laws, and the rules of the various exchanges and other regulatory bodies to which Smith Barney Shearson and myself are subject.

B. This contract shall be governed in all respects by the laws of the State of New York.

C. Nothing in this agreement is intended to conflict with or violate applicable law. Any interpretation of provisions of this agreement shall be limited, if necessary, to give legal effect to such terms by such applicable law.

D. This contract represents my entire understanding with Smith Barney Shearson and may only be changed by a written agreement signed by myself and an authorized Smith Barney Shearson representative.

Dated: _1-19-95_     _Peter DeBlasi_
                    FINANCIAL CONSULTANT ASSOCIATE

I acknowledge that I have received and read a copy of this contract prior to signing it, and understand the terms thereof. I acknowledge that I had been afforded the opportunity to consult with counsel with respect to my execution of this agreement.

_Peter DeBlasi_
FINANCIAL CONSULTANT ASSOCIATE
BY:
SMITH BARNEY SHEARSON INC.